*400 OPINION.
Disney :
Cases are cited by the parties as authority for a holding in accordance with their respective contentions. There is similarity in this proceeding both as to cases where the dividend has been held to be stpck and as to those in which it has been held to be cash. Our decision, in the final analysis, must turn upon the facts in the record, and in reaching it, we may not ignore what was actually done in favor of substance alone.
The resolutions have all of the earmarks of a cash dividend on preferred stock and a purchase by all of the stockholders, except Metz, of unissued preferred and common stock. There is nothing in the dividend resolution expressing intention to pay the dividend in stock at par or any other value. The stock subscription resolution was passed in reliance upon a statement of the corporation’s treasurer that the Makranskys had “offered to purchase”, as therein set forth, stock, and it authorizes the officers to issue the stock subscribed for only “as and when paid for in cash.” The resolution discloses intent to pay accumulated dividends on the preferred stock in cash and to issue additional shares of common and preferred stock of a par value in excess of the dividend, as subscribed for, for cash. Only for cash could the new stock be issued within the authority of the resolution. All of the stockholders had a clear right to demand their dividends in cash and there is nothing in the resolutions requiring the Makranskys to apply their dividends against their stock subscriptions or to pay for their stock concurrently with the distribution of the dividend.
One of the stockholders, Metz, received his dividend in cash in a regular way and was not consulted about the dividend payment or extended the privilege of subscribing for additional shares of stock at par or any other value. The dividend check in favor of all of the stockholders was signed by Harry Makransky, president of the corporation and one of the petitioners in this proceeding. As a director he voted for the resolution and approved the minutes of the meeting. This corporate act under the resolution, the regularity of which is not being questioned here, discloses that promptly after the adoption of the resolution Harry Makransky construed it to contain *401 authority for the payment of the dividend in cash. The effect of the argument now being made is that the corporation had the option to pay the dividend in cash or stock, for if there was power to pay Metz in cash, authority also existed for like payments to the other stockholders. If the resolution authorized only a stock dividend, as we are asked to construe it with reference to the issue here, no authority existed to make the payment to Metz.
Clearly, to the extent that the par value of the stock exceeded the dividend, there was an ordinary sale of stock for cash. We find nothing in the resolutions and other evidence to warrant a finding that the remaining stock was received as a stock dividend. To do so would be equivalent to saying that the resolution required the payment of a cash dividend to one stockholder and a stock dividend to all others. Its plain terms do not warrant such a finding.
The declaration of the dividend created a debtor and creditor relationship between the corporation and its stockholders, as held in Eugene E. Paul, 2 B. T. A. 150, a case in which the language of the resolution is similar to the dividend resolution involved here. The resolution accepting offers to purchase stock as and when paid for in cash created a definite contractual relationship between the corporation and its stockholders which can not be made subservient to the understanding between the stockholders, to which the corporation as such was no party. Such an understanding between stockholders is not sufficient to overcome the relation which the resolutions of the directors’ meetings created in this case. There was obligation by the stockholder to buy and pay cash for both common and preferred stock; there was obligation by the corporation to pay a dividend upon outstanding preferred stock. It had cash on hand sufficient to pay same and the fact that these funds were needed to meet operating expenses is not controlling.
The provision of the preferred stock certificate quoted above suggests prohibition against the holder of preferred stock receiving a stock dividend out of increase of the capital stock. Petitioner argues that this language means increase of the authorized capital stock, but language immediately following states an exception in that the holder of preferred stock shall have preemptive right to the purchase of additional preferred stock authorized or issued by the corporation, and it therefore seems to us that the prohibition goes against any stock issued, whether out of the stock presently authorized or authorized in the future. We conclude that the preferred stock certificate indicates that the holder shall not share in additional stock issued, by way of stock dividends, even within the capital stock authorized at the time of issuance of the certificate. It may be that such a prohibition, however positive, would not prevent *402 a waiver of its provisions by the unanimous consent of the stockholders, but the record herein negatives any idea of unanimous consent in the transaction here considered. In any event, such a provision as quoted above raises a presumption that it was not violated, which it would be if the stock dividend contended for by the petitioner were sustained. The evidence before us does not, in our opinion, overcome such presumption, and therefore for this additional reason we conclude and hold that the dividend was one in cash.
In United States v. Mellon, 281 Fed. 645, the corporation’s board of directors was fully aware of the plan among the holders of substantially all of the stock to accept a 100 percent dividend in stock and to take, at par, such shares of stock as minority stockholders did not accept as a dividend payment, and passed the resolution upon the faith of the agreement. As the court pointed out, the whole plan was in “reality a refinancing of the corporation, in which this defendant and other large stockholders bound themselves to pay, and in fact did pay, into the company’s treasury the additional capital which it required. Their position was not that of having an option to take stock or to take money, but it was an obligation to take stock for which they agreed to pay.” In Jackson v. Commissioner, 51 Fed. (2d) 650, the board of directors relied upon an agreement of the corporation’s principal stockholders that they would turn their dividend checks in for stock as they had done for several years prior thereto and the corporation had insufficient cash to pay the dividend. In each case the proportionate interests of the taxpayers in the respective corporations were not changed by the transaction, a circumstance not present here.
The dividend declared was payable and paid in cash. The fact that the Makranskys applied the amounts received against the purchase of additional stock did not have the effect of changing it to a stock dividend. See Eugene E. Paul, supra; W. J. Hunt, 5 B. T. A. 356; J. E. Brading, 17 B. T. A. 436; Margaret B. Payne, 19 B. T. A. 1305.
Reviewed by the Board.

Decision will be entered for the respondent.